UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DAYLEN R., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:20-cv-00097-RLY-MPB |
| | ) |
| KILOLO KIJAKAZI Commissioner of Social Security Administration, | ) ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION ON
APPROPRIATE DISPOSITION OF THE ACTION**

This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a Report and Recommendation as to its appropriate disposition. (Docket No. 17). Plaintiff Daylen R.,[1] who proceeds in this matter *pro se*, seeks judicial review of the Social Security Administration's final decision deeming him ineligible for Supplemental Security Income (SSI). The matter is fully briefed. (Docket No. 14; Docket No. 15; Docket No. 16). It is recommended that the District Judge **AFFIRM** the decision of the Commissioner of the Social Security Administration finding that Plaintiff Daylen is not disabled.

## I.  Introduction

Daylen applied for SSI under Title XVI of the Social Security Act on December 18, 2017. (Docket No. 11-2 at ECF p. 17). After a hearing, where Daylen was represented by counsel, an ALJ issued a decision that Daylen was not disabled since the date he filed his

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and the Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

application. (*Id.* at ECF pp. 17–27). The Appeals Council denied Daylen's request for review of this decision. (*Id.* at ECF pp. 2–4), thereby rendering it the Agency's final decision for the purposes of judicial review. *See* 20 C.F.R. § 416.1481. The court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

Daylen's appeal, which he filed without the assistance of an attorney, largely consists of a brief summary of his ailments, the severity of his symptoms, summary of his doctor's opinion, and why there are not more medical evidence and/or past work in his record. His brief does not expressly state why he believes the Administrative Law Judge's decision should be remanded; he just states he believes the wrong decision has been made considering there are times that he cannot even work one to two hours without laying down for rest.

## II.     Standard for Proving Disability

To prove disability, a claimant must show he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Plaintiff is disabled if his impairments are of such severity that he is not able to perform the work he previously engaged in and, if based on his age, education, and work experience, he cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 1382c(a)(3)(B). The Social Security Administration (SSA) has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 416.920(a).

Step one asks if the claimant is currently engaged in substantial gainful activity; if he is, then he is not disabled. Step two asks whether the claimant's impairments, singly or in

combination, are severe. If they are not, then he is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1 (the Listings). The Listings includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for the most similarly listed impairment, then the claimant is presumptively disabled and qualifies for benefits. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then his residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations. 20 C.F.R. § 416.920(e). At the fourth step, if the claimant has the RFC to perform his past relevant work, then he is not disabled. The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on his vocational profile (age, work experience, and education) and his RFC. If so, then he is not disabled.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given his age, education, work experience, and functional capacity. 20 C.F.R. §§ 416.912 and 416.960(c); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

3

### III. Standard for Review of the ALJ's Decision

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. This court must affirm the ALJ's decision unless it lacks the support of substantial evidence or rests upon a legal error. *See, e.g.*, *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009); 42 U.S.C. § 405(g). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). The ALJ—not the court—holds discretion to weigh evidence, resolve material conflicts, make independent factual findings, and decide questions of credibility. *Richardson v. Perales*, 402 U.S. 389, 399–400 (1971). Accordingly, the court may not reevaluate facts, reweigh evidence, or substitute its judgment for the ALJ's. *See Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999).

The ALJ is required to articulate a minimal, but legitimate, justification for the decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in the decision, but he cannot ignore a line of evidence that undermines the conclusions he made. The ALJ must trace the path of his reasoning and connect the evidence to his findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

### IV. Analysis

**A.   Statement of Facts**

Daylen alleged disability based on chronic fatigue syndrome, a "hole in [his] heart," hypertension, and various symptoms such as weakness, dizziness, and pain. (Docket No. 11-6 at ECF p. 5). The records and hearing testimony indicated that he treated primarily with family physician William Smith, M.D., for chronic fatigue of unknown etiology. Between at least 2016 and 2018, it appears Dr. Smith completed paperwork for him every six months waiving a work

requirement for food stamps. (Docket No. 11-7 at ECF pp. 11, 14, 19, 126). In June 2016, Daylen told Dr. Smith that he needed to lie down after standing for thirty minutes. (*Id.* at ECF p. 6). Daylen was taking vitamins and a probiotic. (*Id.*).

In November 2016, Daylen underwent a physical therapy evaluation during which he reported he could stand thirty to forty-five minutes and walk ten minutes. (Docket No. 11-7 at ECF p. 29). Daylen indicated he tried to go for a walk outside every day. (*Id.* at ECF p. 30). If Daylen did not rest often enough, his jaw would lock. (*Id.* at ECF p. 29). Daylen express his belief that his chronic fatigue had started three years prior after he took an antibiotic. (*Id.*). Examination was normal and Daylen completed all transfers without hesitation or pain. (*Id.*). He was able to complete a six-minute walk test without notable problems. (*Id.* at ECF p. 30).

In 2017, Daylen saw Dr. Smith just twice. In April 2017, Daylen reported he was able to sit three to four hours, stand thirty minutes, and walk half of one block. (Docket No. 11-7 at ECF p. 15). He further asserted he could "work some jobs" but that he had to lie down once during the day for forty-five minutes and that, if he was not able to lie down, his blood pressure would rise, his body could become injured from strain, and he would feel as though he was going to have a seizure. (*Id.*). But, he acknowledged that he had never actually had a seizure. (*Id.*). Daylen also alleged some shortness of breath and racing heart with exertion. (*Id.* at ECF p. 16). Dr. Smith noted normal findings on examination and commented the Daylen's previous physical therapy evaluation had revealed no significant limitations. (*Id.* at ECF p. 18). Dr. Smith ordered an echocardiogram. He noted Daylen had already undergone a psychological evaluation that revealed no mental condition causing his physical symptoms. (*Id.*).

Daylen returned to Dr. Smith in June 2017 after the echocardiogram demonstrated mild abnormalities. (Docket No. 11-7 at ECF pp. 19, 47-48). Dr. Smith referred Daylen for consults

5

in nutrition, pulmonology, and cardiology. (*Id.* at ECF p. 22).[2] Between August and October 2017, cardiologist Prasanna Yelamanchili, M.D., ordered additional cardiac testing that showed incomplete right bundle branch block and other mild abnormalities. (*Id.* at ECF pp. 35-38). When Daylen returned to Dr. Yelamanchili in May 2018, he denied experiencing difficulty breathing with exertion. (*Id.* at ECF p. 51). He also rejected medication for elevated blood pressure and a referral for a sleep evaluation. (*Id.* at ECF p. 51). He declined a transesophageal echocardiography and instead opted to pursue only conservative observation. (*Id.* at ECF p. 52). Dr. Yelamanchili advised that Daylen can modify his sedentary lifestyle and that he did not require treatment for his cardiac abnormalities. (*Id.* at ECF p. 52).

One year after his previous visit, Daylen returned to Dr. Smith in June 2018. Dr. Smith noted that it did not appear that Daylen's alleged fatigue had a cardiac origin. (Docket No. 11-7 at ECF pp. 125, 128). Dr. Smith reviewed a 2017 laboratory workup that had revealed no metabolic cause for Daylen's fatigue. Dr. Smith referred Daylen to a gastroenterologist and sleep specialist. (*Id.* at ECF p. 128).

In October 2018, Daylen underwent a colonoscopy and EGB; both were normal. (Docket No. 11-7 at ECF pp. 66, 69). A biopsy showed only mild chronic and inactive gastritis. (*Id.* at ECF p. 83). In December 2018, when Daylen returned to Dr. Smith, he again reported having poor energy as well as shortness of breath or high blood pressure if he worked around the house. (*Id.* at ECF p. 130). On examination, Daylen exhibited tachycardia but normal breathing. (*Id.* at ECF pp. 132-33). Daylen's blood pressure was stable and reasonably well controlled. His oxygenation levels were also normal. (*Id.* at ECF p. 134). Daylen agreed to undergo a home sleep study in early 2019, which showed no evidence of sleep disorder. (*Id.* at ECF pp. 150,

---

[2] No records were submitted from a pulmonologist or a nutritionist.

166). Daylen declined a recommendation by sleep specialist Manaf Zawahreh, M.D., to undergo a sleep study in the laboratory. (*Id.* at ECF p. 166).

In 2018, state agency reviewing physicians J. Sands, M.D., and Jerry Smartt, M.D., opined Daylen did not have a severe physical impairment. (Docket No. 11-3 at ECF pp. 4-5, 13-14).

On April 9, 2019, at his hearing and represented by counsel, Daylen testified that he spent most of his time sitting in bed watching television; however, he was able to keep his room clean, make quick meals for himself, drive to the grocery store, and launder. (Docket No. 11-2 at ECF pp. 44, 51, 55). He described his fatigue as lack of energy and tiredness; however, he reported he did not sleep during the day. (*Id.* at ECF p. 55). Daylen maintained that, if he did not lie down during the day, he would eventually experience high blood pressure, strain, muscle soreness, and "spells" where he was "losing control of my head" and his "jaws and throat area . . . really tense and lock up . . . ." (*Id.* at ECF pp. 53, 56-57). Daylen did not take medication for his heart. (*Id.* at ECF p. 47). Daylen estimated he could sit for one to two hours on some days and lift a gallon of milk. (*Id.* at ECF pp. 59-60).

## B.     The ALJ's Sequential Findings

The ALJ followed the five-step sequential evaluation and ultimately concluded that Daylen was not disabled. (Docket No. 11-2 at ECF p. 27). At step one, the ALJ found that Dylan had not engaged in substantial gainful activity[3] since December 18, 2017, the application date (*Id.* at ECF p. 19). At step two, the ALJ found that Daylen had the following severe impairments: "chronic fatigue syndrome, nonrheumatic mitral insufficiency, and incomplete right bundle

---

[3] Substantial gainful activity is defined as work activity that is both substantial (i.e., involves significant physical or mental activities) and gainful (i.e., work that is usually done for pay or profit, whether a profit is realized. 20 C.F.R. § 416.971.

7

branch." (*Id.*). At step three, the ALJ found that Daylen did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id.* at ECF p. 21).

After step three, but before step four, the ALJ concluded:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(B) except lift carry 20 pounds occasionally and 10 pounds frequently, sit for at least 6/8 hours and stand/walk for about 6 out of 8 hours. He should never climb ladders, ropes or scaffolding. He can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The claimant should avoid concentrated exposure to dangerous workplace hazards such as exposed moving machinery and unprotected heights.

(Docket No. 11-2 at ECF p. 22).

There was no past relevant work to analyze at step four. At step five, the ALJ concluded that Daylen was twenty-five years old on the date the application was filed, or a younger individual, with at least a high school education and ability to communicate in English. (Docket No. 11-2 at ECF p. 25). The ALJ then found that there were a significant number of jobs in the economy that Daylen could still perform and, thus, she was not disabled. (*Id.*).

**C. Discussion**

Daylen's brief is construed liberally, given his status as a *pro se* litigant, to argue that the ALJ did not properly consider (1) the objective medical evidence; (2) the medical opinions in the record; and (3) Daylen's own subjective symptom complaints. I will address each argument in turn.

First, I find that the ALJ properly evaluated the objective medical evidence. The ALJ recognized that Daylen complained of fatigue for a period of years. (Docket No. 11-2 at ECF pp. 23-24). He noted that laboratory testing and examinations by multiple specialists, including a

8

cardiologist, resulted in no diagnosis explaining his alleged fatigue. (*Id.* at ECF p. 23). The ALJ conducted further analysis consistent with Agency authority, evaluating Daylen's allegations under the rubric of chronic fatigue syndrome. Social Security Ruling (SSR) 14-1p, 2014 WL 1371245, at *4 (April 3, 2014). That Ruling requires the ALJ to look to the longitudinal record for "detailed medical observations, information about treatment, the person's response to treatment, and a detailed description of how the impairment limits the person's ability to function." *Id.* at *5. The ALJ did so here, and discovered that the record contained little aside from Daylen's subjective complaints of fatigue.

The ALJ observed Daylen had consistently normal examination findings and did not pursue recommended diagnostic testing. (Docket No. 11-2 at ECF pp. 24-25). For example, because a sleep disorder could cause fatigue, cardiologist Dr. Yelamanchili advised Daylen to undergo a sleep study in May 2018; however, he declined. (Docket No. 11-7 at ECF p. 52). Dr. Yelamanchili also recommended further evaluation of his heart; however, he also declined. (*Id.* at ECF p. 52). In June 2018, Dr. Smith advised Daylen to undergo a sleep study. (*Id.* at ECF p. 128). Daylen eventually agreed to an at-home sleep study in January 2019 (*Id.* at ECF p. 149), but when a sleep specialist advised him to repeat his sleep study in a laboratory, explaining that home studies had technical limitations, Daylen declined. (*Id.* at ECF p. 166). Daylen also declined treatment for elevated blood pressure despite his allegation that exertion triggered it. (*Id.* at ECF pp. 15, 51). Nevertheless, family provider Dr. Smith noted Daylen's blood pressure was stable and reasonably well controlled off medication. (Docket No. 11-7 at ECF pp. 11, 134). A physical therapist also observed that Daylen's blood pressure and heart rate did not change notably during a walking test. (*Id.* at ECF p. 30). Other normal examination findings showed Daylen had full strength throughout, normal gait, and normal ability to make transfers. (Docket

No. 11-2 at ECF p. 25). This objective medical evidence constituted substantial evidence upon which the ALJ was entitled to rely. *See Sienkiewicz v. Barnhart*, 409 F.3d 798, 803-04 (7th Cir. 2005) (finding that the ALJ was entitled to rely on factors such as findings of examining doctors and a plaintiff's conservative treatment history).

Second, the ALJ reasonably evaluated the opinions of the state agency reviewing physicians. Because Daylen filed his application after March 27, 2017, 20 C.F.R. § 416.920c applies. ALJs will evaluate the persuasiveness of medical opinions using several factors, including supportability and consistency. 20 C.F.R. § 416.920c. In 2018, Drs. Sands and Smartt opined Daylen did not have a severe physical impairment. (Docket No. 11-3 at ECF pp. 4-5, 13-14). The ALJ found these opinions not persuasive, and properly supported his analysis by noting the opinions were unsupported by the evidence and inconsistent with Daylen's complaints of chronic fatigue and testing related to his heart. (Docket No. 11-2 at ECF p. 25). The ALJ followed the regulations in analyzing these opinions. The ALJ did not err when not considering any other opinions because there were no other opinions to consider. Daylen seems to suggest that the ALJ should have relied on Dr. Smith's opinion, which Daylen argues was that Daylen should apply for disability and excused him from work for years so he could continue getting food stamps. (Docket No. 14 at ECF p. 2).[4] This argument is without merit. Dr. Smith's work excuse is not a medical opinion under the regulations. The regulations define a medical opinion as a statement from a medical source about what a claimant can still do despite his or her impairment(s) and whether the claimant has one or more impairment-related limitations or restrictions in, for example, the ability to perform physical or mental demands or work activities

---

[4] Daylen's brief does not identify the doctor or opinion to which he is referring to, but the undersigned infers that he is referencing Dr. Smith's completion of paperwork excusing him from a work requirement to receive food stamps. (Docket No. 11-7 at ECF pp. 18-19, 126).

10

and adapt to environmental conditions. 20 C.F.R. § 416.913(a)(2). The work excuse form does not satisfy this definition; it is not a medical opinion. Moreover, the final determination of "disabled" is one reserved for the Commissioner, not a doctor. 20 C.F.R. § 416.920b(c) (a statement that an individual is disabled or unable to work are on issues reserved to the Commissioner). Finally, the regulations provide that an ALJ will not offer any analysis about how they considered evidence such as this in the decision. *Id.* ("Because the evidence listed in . . . this section is inherently neither valuable nor persuasive to the issue of whether you are disabled or blind under the Act, we will not provide any analysis about how we considered such evidence in our . . . decision[.]"). The ALJ did not err in not addressing Dr. Smith's notations excusing Daylen from work.

  Finally, the ALJ conducted a proper evaluation of Daylen's subjective allegations. After concluding that an individual has a medically determinable impairment that could reasonably be expected to produce a claimant's symptoms, the ALJ will then evaluate the intensity and persistence of the symptoms and determine the extent to which the symptoms limit the person's capacity for work. 20 C.F.R. § 416.929. The ALJ will consider factors such as the objective medical evidence, daily activities, and the nature and frequency of the person's attempts to obtain medical treatment. 20 C.F.R. § 416.929(c); SSR 14-1p, 2014 WL 1371245, at *7. The ALJ properly considered Daylen's subjective allegations under the regulations and rulings. He reviewed the allegations (Docket No. 11-2 at ECF p. 23-24) and compared them to Daylen's own statements made to medical providers, decisions to decline further testing, and normal examination findings. (*Id.* at ECF p. 24). For example, in April 2017, Daylen told Dr. Smith he could sit three to four hours, stand thirty minutes, walk half of one block, and only needed to lie down for forty-five minutes during the entire day. (*Id.* at ECF p. 15). This statement was

11

inconsistent with his current allegation that he must sit or lie down "for hours." (Docket No. 14 at ECF p. 1). *See Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (finding the ALJ properly considered claimant's inconsistent statements in finding her not entirely credible).

In August 2017, Daylen told Dr. Yelamanchili that he had reasonable exercise tolerance in general. (Docket No. 11-2 at ECF p. 5; Docket No. 11-7 at ECF p. 35). Although Daylen alleged he experienced muscle soreness with activity, the ALJ noted that the physical therapist's observation that Daylen could complete all transfers during the evaluation with no evidence of hesitation or pain. (Docket No. 11-2 at ECF p. 25; Docket No. 11-7 at ECF p. 29). No examiner observed Plaintiff appearing in pain. The ALJ reasonably relied on this evidence in finding that Daylen's allegations were not entirely consistent with the record as a whole. (Docket No. 11-2 at ECF p. 23). Plaintiff was represented by counsel at the Agency level. *Summers*, 864 F.3d at 527 (represented claimants are presumed to have put forth their best case). There is no evidence that the ALJ's subjective symptom determination was wrong, let alone "patently wrong." *Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013).

In sum, Daylen essentially requests that this Court reweigh the evidence in his favor, but that is beyond the scope of this Court's review. *Summers*, 864 F.3d at 526 ("Our review is deferential; we will not reweigh the evidence or substitute our judgment for that of the ALJ.") (citation omitted). On appeal Daylen alleges that symptoms such as skin hypersensitivity, fatigue, dizziness, high blood pressure, pain, weakness, partial seizures, and digestive issues prevented him from sustaining work activity on a full-time basis. (Docket No. 14 at ECF p. 1). However, despite it being his burden to provide the evidence to the Agency, the record contains no references to skin hypersensitivity or a "strict diet" that controlled the "pain and discomfort"

that he now alleges and the remainder of those alleged symptoms (or the lack of evidence thereof) was appropriately addressed by the ALJ and cannot be reweighed by this Court.

## V. Conclusion

For all these reasons, the Magistrate Judge recommends that the Court **AFFIRM** the ALJ's opinion. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

**SO RECOMMENDED** the 23rd day of August, 2021.

_____
Matthew P. Brookman
United States Magistrate Judge
Southern District of Indiana

**DISTRIBUTION:**

U.S. Mail to:
DAYLEN ROGERS
10251 Canal St.
Newburgh, IN 47630


Served electronically on all ECF-registered counsel of record.